UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                              :

UNITED STATES OF AMERICA

                                              :               24-CR-293 (S-1)(NRM)

       *-against-*

                                              :

SHEU HONG TAM YIP,
also known as "Suzanne,"                           :
also known as "Susan," and
GUIXIANG YUE,                                            :
also known as "Charlie,"

                                              :
              Defendants.
                                              :
---------------------------------------------------------x


**Memorandum Of Law in Support of Defendant Guixiang Yue's Motion to Sever**


**November 10, 2025**

**BRILL LEGAL GROUP, P.C.**
64 Hilton Ave.
Hempstead, NY 11550
(516) 206-2002

## Preliminary Statement

This memorandum of law is submitted on behalf of Defendant Guixiang Yue's pre-trial motion pursuant to Federal Rule 12(b), Fed. R. Crim. P., for severance of his case from that of his co-defendant.

## Introduction

Dr. Guixiang "Charlie" Yue is an unassuming acupuncturist who has been a partial owner of practices on Long Island, in Queens and in Brooklyn. He had relied on his co-defendant, Susan (Sheu Hong Tam Yip) in the past for financing, assistance with office planning and administration, and introductions to other business opportunities and investments.

Among the investment opportunities Susan brought to Dr. Yue were the chance to invest in newly opening adult day care businesses--Blue Sky Adult Day Care and Joyful Adult Day Care. Dr. Yue had no active role in either business but would occasionally give a lecture to the attendees. He never received an accounting from his investments, was never offered a chance to review the books and records of either business, and other than small payments for his lectures, did not receive a return from his investments.

Dr. Yue's first indication that something was amiss was when he heard that the government had raided Blue Sky. After that, his requests to Susan for additional information were ignored.

At the time of the crimes alleged, Dr. Yue was in a partnership in the same practice with a physical therapist. They kept separate patients and separate records but shared overhead and administrative expenses.

The government asserts that Dr. Yue was doing any or all of the following: providing acupuncture to patients who didn't need it and billing Medicare for it; falsifying care and billing Medicare for it; or paying and/or receiving payment for patient referrals through Medicare-funded programs, either to other providers or directly to patients.

Dr. Yue is charged with Conspiring to Defraud the United States and Pay and Receive Health Care Kickbacks totaling $50,800 (Count 4); three individual counts of Money Laundering totaling $62,800 (Counts 5-7); and two individual counts of Unlawful Monetary Transactions, each for "the approximate amount of $15,000" (Counts 11 and 12). 42 USC §1320a-7b(b)(1)(A), (2)(A), (2)(B); 18 USC §1956(a)(1)(B)(i), 2 and 3551 et seq; 18 USC §1957(a), (b), 2 and 3551 et seq, respectively.

By contrast, Ms. Yip is charged with Conspiracy to Commit Health Care Fraud and Health Care Fraud (Counts 1-3), along with all of the other counts. Yip's overt acts for Count 4 are, notably, signing agreements with multiple Medicaid-funded managed long-term care (MLTC) plans, submitting false claims to those plans on behalf of individuals, and then paying those individuals off in cash. The government has calculated the loss amount to Medicare as $21 million, which represents everything Medicare paid to Blue Sky.

In even greater contrast between Ms. Yip and Dr. Yue is the fact that the government has provided video taken by an informant who received money at Blue Sky, upon information and belief, directly from Ms. Yip. In that video, Ms. Yip can be seen counting out the cash and handing it directly to the informant.

The charges against Dr. Yue are based upon the government's belief that Dr. Yue was aware of what Susan was doing at Blue Sky and that the word "Transportation" written on the memo line of some checks was code for something nefarious. The only evidence supporting the §1320(a) conspiracy and related substantive charges (Count 4) are three checks, only one of which was written to an alleged co-conspirator. The other two had memos that included the word "Transportation."

The Money Laundering charges are also based on three different checks, one of which Dr. Yue wrote to himself. The other two had memos that included the word "Transportation." The Money Laundering charges rest on the government's theory that Dr. Yue was receiving money from Blue Sky that Blue Sky had received as a result of its scheme to defraud Medicare, and that Dr. Yue was aware that the money he was receiving was from an illegal source.

The recently added Unlawful Monetary Transactions charges (Counts 11 and 12) address two other checks that Mr. Yue wrote to himself that exceeded the $10,000 threshold required for charging this crime. Other than the fact that they fit into the government's theory that Dr. Yue's practice was receiving funds it was not entitled to receive from Medicare via the alleged Blue Sky kickback scheme, and therefore Dr Yue was not entitled to receive those funds personally, it appears that the government has no additional evidence to support these counts.

For the reasons stated below, Dr. Yue's trial should be severed from Ms. Yip's.

## APPLICABLE LEGAL STANDARD

Rule 8 of the Federal Rules of Criminal Procedure allows multiple defendants to be charged in the same indictment if they are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).[1] When multiple defendants are charged in the same indictment, a joint trial is the "preference." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). However, Rule 14(a) provides that "the court may order separate trials of counts [or] sever the defendants' trials" where the "joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant[.]" Fed. R. Crim. P. 14(a). In fact, the "district court should grant severance under Rule 14 . . . if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. There is no exclusive test for the degree of prejudice requiring severance of a defendant; "[t]he risk of prejudice will vary with the facts in each case." *Id.* at 539. To overcome the preference for joint trials and secure a severance, a defendant generally "'must demonstrate substantial, undue, or compelling prejudice.'" *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)). While the general rule in conspiracy cases is that persons indicted together should be tried together, that preference may be overcome if there is "specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials."

---

[1] When more than one defendant is joined in the same indictment, the joinder in governed by Rule 8(b), not Rule 8(a). United States v. Eagleston, 417 F.2d 11, 14 (10th Cir. 1969); see also United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988) (holding that where multiple defendants are charged in the same indictment, Rule 8(b) governs motion for severance based on improper joinder); United States v. Bova, 493 F.2d 33, 35 (5th Cir. 1974) (holding that when joining multiple defendants rather than multiple counts against one defendant, Rule 8(b) exclusively controls).

*United States v. Smith*, 197 F.3d 225, 230 (6th Cir. 1999) (cleaned up). That said, "[t]he trial court has almost unlimited discretion under Rule 14 to determine whether sufficient prejudice exists to warrant severance." *United States v. Gallo,* 668 F. Supp. 736, 748 (E.D.N.Y. 1987) (citing *Opper v. United States,* 348 U.S. 84, 95 (1954)). In exercising that discretion "courts must be scrupulous to avoid the specter of guilt by association—or, more likely, guilt by confusion." *Id.* at 750.

Some factors to be considered by a court in its exercise of discretion include:(i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against codefendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone. *U.S. v. Guillen-Rivas*, 950 F.Supp.2d 446, 457 (E.D.N.Y. 2013).

## ARGUMENT

**A joint trial will prevent the jury from making a reliable judgment about guilt or innocence**

It has long been resolved that a severance should be granted "if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[S]everance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant." *United States v. Blankenship,* 382 F.3d 1110, 1123 (11th Cir. 2004). This will occur when the government sets out to prove the healthcare fraud schemes alleged in Counts

6

1 through 3. Those counts do not charge Dr. Yue. The proof admissible on those counts which would not be admissible against Dr. Yue in a separate trial would undoubtedly pollute Dr. Yue in the eyes of the jury, as they encompass over $20 million in alleged fraud against the Medicare program.

## Antagonistic Defenses and Spillover Prejudice

Here, Dr. Yue suggests that his trial should be severed from Ms. Yip's due to their antagonistic defenses and the prejudicial spillover that would have a drastic negative impact on him should their cases be tried together.

To compel severance for antagonistic defenses, the essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.. Such compelling prejudice does not arise where the conflict concerns only minor or peripheral matters which are not at the core of the defense. *United States v. Cardascia*, 951 F2d 474 (2d Cir 1991). However, "severance should be granted when antagonism at the essence of the defenses prevails to such a degree -- even without being mutually exclusive -- that the jury unjustifiably infers that the conflict alone indicated that both defendants were guilty." *Id*, citing *United States v Serpoosh*, 919 F2d 835 (2d Cir 1990).

At no time was Dr. Yue involved in the marketing, administration or billing of services for Blue Sky. He did not submit bills to Medicare or supervise those who did. He had nothing to do with the day-to-day operations of Blue Sky whatsoever. That was entirely the domain of Ms. Yip.

At a joint trial, it would be incumbent upon Dr. Yue's counsel to impress upon the jury that Ms. Yip was fully responsible for the management of Blue Sky and fully culpable for any of the actions involving Blue Sky in the indictment. It would also be necessary at a joint trial to use whatever information is at Dr. Yue's disposal to undermine Ms. Yip's credibility with

the jury, as the only logical conclusion to draw from the discovery provided by the government is that Ms. Yip perpetrated a massive fraud while keeping Dr. Yue in the dark. In essence, counsel for Dr. Yue would be required to act as a second prosecutor against Ms. Yip, as it would be in the best interests of Dr. Yue at a joint trial for Ms. Yip to be convicted. (As an initial matter, his claim of ignorance would be undermined by a similar claim from his co-defendant—there is an obvious perpetrator here, and it is not him.)

Furthermore, permitting the government to benefit from such spillover prejudice in proving Dr. Yue's state of mind on Count 4 "provide[s] the government with an unfair windfall that the rules of evidence and elemental notions of fairness would otherwise not allow, and that Rule 8(b) does not envision." *United States v. Breinig,* 70 F.3d 850, 853 (6th Cir. 1995). The sheer number of false claims subsumed under Overt Acts d, e, and g alone, let alone the additional acts the government will likely ask the Court to accept as either encompassed by the conspiracy or 404(b) evidence, dwarfs by orders of magnitude the three checks Dr. Yue is alleged to have written.

If Dr. Yue is tried with Ms. Yip and the jury is exposed to all of the evidence charged against Ms. Yip in Counts 1 through 3, the jury will hear evidence of hundreds or thousands of allegedly fraudulent claims submitted to Medicare for the purpose of carrying out a scheme to commit healthcare fraud—a scheme in which he is not charged. Similarly, if he is tried jointly with Ms. Yip on Count 4, the jury will hear evidence of hundreds or thousands of allegedly fraudulent claims submitted to Medicare for the purpose of carrying out a scheme to commit healthcare fraud amounting to tens of millions of dollars with respect to the overt acts alleged against Ms. Yip (of which the government has not alleged Dr. Yue had any knowledge), whereas the overt acts attributed to him are writing three checks. It is simply not possible for a jury, even

with careful instruction, to compartmentalize the hundreds or thousands of individual actions alleged against Ms. Yip and to ignore that evidence in considering Dr. Yue's subjective knowledge and intent in writing three checks.

It is also highly doubtful that all of the evidence that relates to the Health Care Fraud conspiracy and substantive count would be admissible in a severed trial against Dr. Yue alone. As such, a severed trial here would be preferable to avoid prejudice. See *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992).

## **CONCLUSION**

Based on the foregoing, the motion to sever Dr. Yue from Ms. Yip in this case, and to grant him a separate trial, should be granted.

Respectfully submitted,

_____
Peter E. Brill