TJT:PJC/LS
F.# 2022R00128

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                      Docket No. 24-CR-293 (S-1) (NRM)

GUIXIANG YUE,
       also known as "Charlie,"

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S OPPOSITION TO GUIXIANG YUE'S MOTION TO SEVER

                                                                         LORINDA LARYEA
                                                                         Acting Chief, Fraud Section
                                                                         Criminal Division
                                                                         U.S. Department of Justice

Patrick J. Campbell
Leonid Sandlar
Trial Attorneys, Fraud Section
Criminal Division
U.S. Department of Justice

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

BACKGROUND .............................................................................................................................. 3

    I.   The Health Care Fraud and Kickback Scheme ..................................................................... 3

    II.  Money Laundering .............................................................................................................. 5

    III. The Charges ....................................................................................................................... 5

ARGUMENT .................................................................................................................................... 6

    I.   A Joint Trial is Well Warranted Because the Superseding Indictment Arises out of
        Common Facts, Charges, and Proof ................................................................................... 8

    II.  Yue Fails to Show that a Joint Trial Will Deprive Him of a Fair Trial ............................. 11

       A.  Yue Fails to Show that He and Yip Have "Mutually Antagonistic" Defenses
           That Would Prejudice Him ............................................................................................ 11

       B.  Yue Fails to Show that a Joint Trial Will Result in "Spillover Prejudice" ..................... 13

CONCLUSION ............................................................................................................................... 16

## PRELIMINARY STATEMENT

Two defendants who schemed together and were indicted together should be tried together. The Court should deny defendant Guixiang Yue's motion to sever his trial from his co-defendant, Sheu Hong Tam Yip, ECF No. 47 (the "Motion" or "Mot."). Yip and Yue are charged in the Superseding Indictment with conspiring to engage in a multi-year health care kickback and fraud scheme at a series of businesses that they mostly co-owned. Together, Yip and Yue organized their businesses, agreed to pay illegal kickbacks to patients to induce them to sign up for services that were not provided, accepted payment from medical providers to whom they steered patients, and laundered the proceeds of the scheme. Consistent with their similar roles in the scheme, the defendants are charged in a series of interrelated counts, which are predicated on overlapping evidence. The common facts, charges, and proof presumptively support a joint trial.

Yue's arguments otherwise are meritless. In his Motion, Yue claims that because his role in two of the businesses was less involved than Yip's, a joint trial would result in "antagonistic defenses" and "spillover prejudice." Yue is wrong on the facts and the law. The evidence will prove that Yue was an integral figure in a multi-year health care kickback and fraud scheme together with Yip, even if his role was not identical to Yip's. Any modest differences in their roles and resulting criminal charges do not warrant severance, especially where the vast majority of the evidence would be admissible against Yue in a separate trial. In short, Yue fails to meet his heavy burden of showing that he would be irreparably prejudiced by a joint trial. Accordingly, the Court should deny the Motion.

BACKGROUND

I. The Health Care Fraud and Kickback Scheme

For more than a decade, Yip and Yue were partners in various health care businesses in Brooklyn and Queens that operated principally by billing Medicaid and Medicare.[1] Their partnership included the establishment and operation of multiple social adult day care centers ("SADCs") and medical offices that sourced and retained patients through kickback arrangements. See ECF No. 39 (the "Superseding Indictment") ¶¶ 14-15, 30-32. These businesses in turn billed Medicare and/or Medicaid for services that were not provided as represented. Id. ¶¶ 30-32.

Specifically, Yip and Yue were business partners in Joyful Adult Day Care Center Inc. ("Joyful"), a SADC located in Brooklyn, which they opened in 2012 and operated through at least 2022. See id. ¶¶ 14-15. The defendants were also partners in Blue Sky Adult Day Care Inc. ("Blue Sky"), a SADC located in Queens, which they formed in 2015 and operated until 2023. Id. In the same building as Blue Sky, Yue established My Physical Therapy & Acupuncture PLLC ("My PT") in 2018 and operated it until 2022. See id. ¶ 15. Similarly, the defendants were partners in YLC Adult Day Care Inc. ("YLC"), another SADC in Brooklyn, that was formed in early 2016 and operated into the charged period,[2] and SMYL Care Inc. ("SMYL"), a medical office established in late 2016 that operated through at least 2019.

In order to submit claims to Medicaid and Medicare for their businesses, both Yip and Yue signed enrollment documents that acknowledged that payment of claims was conditioned

---

[1] The factual proffer contained in this Opposition is not a complete proffer of the evidence the government intends to introduce at trial. The government reserves the right to proffer additional facts that the Court may need to rule on the Motion.

[2] YLC is not identified in the Superseding Indictment. The government will give timely notice pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure as to "other acts" evidence it intends to introduce at trial.

on accurate submissions that complied with the law and were not induced by kickbacks. For example, Yip signed and submitted numerous documents to Medicaid managed long term care ("MLTC") plans for SADC services that acknowledged compliance with the law (id. ¶ 49), while Yue signed Medicare forms on behalf of his physical therapy clinic that represented the same. As described below, these representations were false.

Contrary to the defendants' representations, each of their health care business ventures—Joyful, YLC, Blue Sky, SMYL, and My PT—relied on a steady stream of Medicare beneficiaries and Medicaid recipients induced by the payment of illegal kickbacks. See id. ¶¶ 30-32. Specifically, Yip and Yue's staff and associates at SMYL, Blue Sky, and My PT paid kickbacks to Medicare beneficiaries and Medicaid recipients to induce them to sign up for services at these health care businesses and to permit these businesses to submit claims to Medicare and Medicaid, even though most of the services were not rendered. See id. ¶¶ 36, 38. Yue paid kickbacks himself through Cooperating Witness-1 ("CW-1"), a health insurance salesperson, to patients whom CW-1 referred to Yue's medical clinics, including SMYL and My PT.

Yip and Yue also received kickbacks for steering their captive stream of SADC patients to nearby medical offices. Yip and Yue received kickbacks from Cooperating Witness-2 ("CW-2"), a physical therapist, in exchange for Yip and Yue referring SADC patients from Joyful, whose health insurance could be billed for therapy services that was typically not provided as represented. Id. ¶ 35. Later, Yip, Yue, and their co-conspirators also received kickbacks from medical providers who accepted SADC patient referrals from Blue Sky to professional corporations that operated in My PT's adjacent office. See id. ¶ 37.

Each of the businesses—Joyful, YLC, Blue Sky, SMYL, and My PT—billed Medicare and/or Medicaid for services that were not provided, were not provided as represented

4

to health insurers, and/or were induced by the payment or receipt of kickbacks and bribes. Id. ¶¶ 30-32.

    II.    <u>Money Laundering</u>

Health care entities that primarily bill Medicare and Medicaid—like Joyful, YLC, SMYL, Blue Sky, and My PT—do not generate cash. But these businesses required a ready supply of cash to pay kickbacks to patients and others. Since such kickback payments are unlawful, the cash must be generated surreptitiously. Here, Yip and Yue conducted unlawful financial transactions in order to generate the necessary cash and to cover up their kickback schemes. Id. ¶¶ 33, 40-41. Specifically, Yue is charged with two transactions involving checks for "transportation," a codeword utilized to conceal the payment of kickbacks, and he is further charged with a transfer of fraud proceeds to himself. Id. ¶¶ 51, 53. Yip is charged with engaging in transactions involving business entities she controlled that were designed to conceal the nature of the transactions. Id.

    III.    <u>The Charges</u>

The Superseding Indictment charges Yip and Yue with overlapping fraud schemes and the related laundering of the fraud proceeds. Yip is charged in Counts One through Three with conspiring to commit health care fraud and committing health care fraud in violation of Title 18, United States Code, Sections 1347 and 1349. Id.

Yip and Yue are charged together in Count Four with conspiring to (a) defraud the United States, (b) receive kickbacks for referring patients, (c) pay kickbacks for the referral of patients, and (d) pay kickbacks to patients to induce them to arrange for services for which a federal health care program could be billed, all in violation of Title 18 United States Code, Section 371. Id.

Yip and Yue are charged in Counts Five through Ten with three counts each of concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). Id.

Finally, Yip and Yue are charged in Counts Eleven through Fourteen with two counts each of engaging in unlawful monetary transactions, in violation of Title 18, United States Code, Section 1957. Id.

## ARGUMENT

Yue's motion to sever should be denied. Emphasizing his allegedly less hands-on role at two SADCs, Yue argues that a fair trial would be undermined for two reasons. First, Yue argues that at a joint trial with Yip, each defendant would be incentivized to point the finger at the other, resulting in "mutually antagonistic" defenses. Mot. at 7-8. Second, Yue argues that, because he is not charged in Count One, and because Count Four alleges Yip in more overt acts than Yue, a joint trial would result in "spillover prejudice" as to Yue. Id. at 8-9.

These arguments are without merit because they are predicated on a misreading of the legal standard for severance and an incomplete assessment of Yue's role in the criminal scheme, the resulting criminal charges, and the anticipated trial proof. The evidence will prove that Yue was an integral participant in multi-year health care kickback and fraud scheme together with Yip, even if his role was not identical to Yip's. The scheme involved multiple SADCs and medical clinics that operated through an intertwining web of kickbacks, referrals, and false claims. In view of their central roles in the inextricably linked schemes, the Superseding Indictment charges two overlapping conspiracies in Counts One and Four. Although Count One only charges Yip, proof of that count substantially overlaps with proof of Count Four in which Yip and Yue are both charged. The vast majority of this proof would be admissible against each defendant even if

6

each defendant were tried separately. Accordingly, a joint trial will not result in "spillover prejudice." Further, Yue's claim of prejudice from "mutually antagonistic" defenses is speculative and is far from the rare situation where conflicting defenses result in extreme prejudice that requires severance.

In the ordinary course, defendants who are indicted together, such as Yip and Yue, should be tried together because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks omitted). Joint trials also "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." United States v. Nordlicht, No. 16-CR-00640 (BMC), 2018 WL 1796542, at *2 (E.D.N.Y. Apr. 16, 2018) (internal quotation marks omitted).

Accordingly, a defendant seeking severance under Rule 14 of the Federal Rules of Criminal Procedure has the "extremely difficult burden of proving not merely that he would be prejudiced by a joint trial, but that the prejudice would be so great as to deprive him of his right to a fair trial." United States v. Bellomo, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (quoting United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)) (internal quotation marks omitted); see also Zafiro, 506 U.S. at 539 (severance should be granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."); United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice.")). Such a risk may be heightened where, for example, "many defendants are tried together in a complex case and they have markedly different degrees of culpability." Zafiro, 506 U.S. at 539.

7

This burden is "extremely difficult" because the defendant must show that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998); United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993) (the "risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."). Indeed, even where the defendant shows a risk of prejudice, "'less drastic measures' than severance, 'such as limiting instructions, often will suffice to cure any risk of prejudice.'" United States v. Webb, No. 15-CR-252 (PKC), 2020 WL 6393012, at *4 (E.D.N.Y. Nov. 1, 2020) (quoting Zafiro, 506 U.S. at 539); see also United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (same).[3]

For the reasons that follow, Yue fails to meet his "extremely difficult" burden, and his Motion should be denied.

I.  A Joint Trial is Well Warranted Because the Superseding Indictment Arises out of Common Facts, Charges, and Proof

As a threshold matter, a joint trial of Yip and Yue is well warranted because the charges in the Superseding Indictment arise from a common scheme and set of facts. A single trial would promote efficiency, limit inconveniences to witnesses, avoid delays in bringing both defendants to trial, and permit the entire story to be presented to a single jury. See Zafiro, 506 U.S. at 537; Nordlicht, 2018 WL 1796542, at *2.

.

---

[3] The determination of whether "substantial prejudice" exists is highly fact-specific and must be evaluated on a case-by-case basis. United States v. Barret, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (citing Zafiro, 506 U.S. at 539). The decision is committed to the sound discretion of the trial judge. United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989).

8

Yip and Yue are charged in connection with a multi-year health care kickback and fraud scheme at a series of businesses that Yip and Yue mostly co-owned as business partners. The government expects the evidence to show that the defendants were close associates and joint venturers who were similarly situated in the charged scheme involving the establishment of health care businesses that relied on billing Medicare and Medicaid, including Joyful, Blue Sky, YLC, SMYL, and My PT. As noted, the scheme involved the payment of illegal kickbacks to patients to induce them to sign up for services that were mostly not provided, the receipt of kickbacks from medical providers to whom patients were steered, and the laundering of the proceeds of the scheme.

Consistent with their similar roles in the scheme, the defendants are charged in a series of interrelated counts including conspiracy to defraud the United States and pay and receive health care kickbacks (Count Four), and the money laundering counts (Counts Five through Fourteen). Although Yue is not charged with conspiracy to commit health care fraud (Count One) and health care fraud (Counts Two and Three), the health care fraud scheme is an inextricable part of the broader conspiracy to defraud the United States and pay and receive health care kickbacks (Count Four) with which Yip and Yue are charged together. This is because the several SADCs that Yip and Yue jointly owned, including Blue Sky, paid kickbacks to their Medicaid beneficiaries and referred them to medical offices co-owned by Yue in exchange for kickbacks. Accordingly, Yip's false statements on behalf of these SADCs were false not only because they were for services that were not rendered as represented, but also because they were for claims that were induced by the payment of kickbacks, contrary to the program rules and the Anti-Kickback Statute. Moreover, proof of the conspiracies charged in Count One and in Count Four also establishes the specified unlawful activity ("SUA") underlying the money laundering counts with which Yip and Yue are

9

both charged. See 18 U.S.C. § 1956(7) (defining "specified unlawful activity" to include "any act or activity constituting an offense involving a Federal health care offense"); 18 U.S.C. § 24(a)(2) (defining "Federal health care offense" to include violations of 18 U.S.C. § 371 and § 1349).

Accordingly, the vast majority of the evidence in this case is admissible against both defendants as direct evidence of a conspiracy to defraud the United States and to pay and receive kickbacks (Count Four). The categories of documentary evidence will include: (i) enrollment documents that acknowledged that payment of claims was conditioned on accurate submissions that complied with the law and were not induced by kickbacks; (ii) claims data from Medicaid and/or the MLTCs and Medicare for the jointly owned enterprises (Joyful, YLC, Blue Sky, SMYL, and My PT); (iii) bank records showing the credits from the MLTCs and Medicare and debits constituting the payment of kickbacks; (iv) video recordings showing the payment of kickbacks to patients; and (v) physical evidence recovered from premises searches of Blue Sky and My PT, including ledgers reflecting the payment of kickbacks to patients. Witness testimony will show that patients were paid kickbacks at these businesses at Yip's and Yue's direction and that Yip and Yue engaged in financial transactions to facilitate and disguise the kickbacks. Given their close business relationship at the multiple businesses over several years, the trial witnesses against Yue will be largely the same as those in a trial against Yip. The testimony will be admissible as party-opponent declarations or statements of a co-conspirator in furtherance of the conspiracy.

Since the overwhelming majority of the documentary evidence and testimony in this case is admissible against both defendants, separate trials against Yip and Yue would be almost entirely duplicative, could lead to inconsistent verdicts, and would create all the attendant inconveniences involved in forcing the same witnesses to appear for two identical trials. See Zafiro, 506 U.S. at 537 (stating that joint trials "promote efficiency" and "'avoid[] the scandal and inequity

of inconsistent verdicts'"). In short, the common facts, charges, and proof against Yip and Yue presumptively support a joint trial.

II.     Yue Fails to Show that a Joint Trial Will Deprive Him of a Fair Trial

In view of the preference and sound basis for a joint trial, Yue fails to carry his "extremely difficult" burden of proving not merely that he would be prejudiced by a joint trial, but also that the prejudice would be so great as to deprive him of his right to a fair trial. Bellomo, 954 F. Supp. at 649.

   A. Yue Fails to Show that He and Yip Have "Mutually Antagonistic" Defenses that Would Prejudice Him

First, Yue argues that severance is warranted because he anticipates "antagonistic defenses" between himself and Yip that may cause a jury to infer unjustifiably that both defendants are guilty. Mot. at 7-8. This argument lacks merit because it is well-settled that severance is not required every time co-defendants advance defenses that are adversarial to one another. Zafiro, 506 U.S. at 538 ("Mutually antagonistic defenses are not prejudicial per se."). "Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." United States v. Cardascia, 951 F.2d 474, 485 (2d Cir. 1991). See also United States v. O'Connor, 650 F.3d 839, 858 (2d Cir. 2011) ("The possibility that codefendants may mount mutually antagonistic defenses is not itself a ground for severance where the risk of prejudice can be offset by 'less drastic measures' . . . 'such as limiting instructions'") (quoting Zafiro, 506 U.S. at 539). Accordingly, severance based on conflicting defenses is exceedingly "rare." United States v. Nadeem, No. 13 CR. 0424 BMC, 2014 WL 3563407, at *6 (E.D.N.Y. July 18, 2014).

Here, the defense that Yue identifies in his Motion is far from a "mutually antagonistic" defense, much less one that is so "prejudicial" that it would require severance. Yue's

11

overarching defense theory is that he had "no active role" in the SADCs, Joyful and Blue Sky, in which the day-to-day operations were Yip's domain. See Mot. at 2, 7 ("At no time was Dr. Yue involved in the marketing, administration or billing of services for Blue Sky). In a joint trial, Yue anticipates the need to point the finger at Yip who was allegedly "fully responsible for the management of Blue Sky." Id. at 7. Yue does not proffer Yip's antagonistic defense except to anticipate a "similar claim" from his co-defendant. Id. at 8.

Yue's claim is without merit for several reasons. First, Yue's arguments concerning "antagonistic defenses" is entirely speculative. Since Yip did not file any pretrial motion in this case, Yip's precise defenses are not known, and Yue has failed to proffer any known defense on behalf of Yip. In fact, Yip's actual defenses at a joint trial might prove to be largely consistent with Yue's defenses, rather than antagonistic. Defenses such as the absence of an intent to defraud, a lack of knowledge concerning the specifics of the false claims, or an effort to blame other co-conspirators (such as medical billers or other co-owners) would hardly be inconsistent with Yue's. Without any reliable preview of Yip's defenses, the defendant's application based on antagonistic defenses is premature at best.

Second, as articulated, Yue's argument rests on potential antagonistic defenses arising from the differing roles of Yue and Yip in two SADCs, Blue Sky and Joyful. See Mot. at 2. But the government's trial proof is far broader than these SADCs alone. Accordingly, even if they had different roles at these SADCs, Yip and Yue had similar roles in the broader scheme to profit from the establishment and operation of SADCs and medical offices that billed Medicaid and Medicare and sourced and retained patients through kickback arrangements. Accordingly, even the assertion of inconsistent positions as to their roles in the two SADCs is unlikely to constitute "antagonistic defenses" in the context of the proof of the broader scheme.

12

Finally, even if Yue raised the specter of "mutually antagonistic" defenses, which he has not, he has not explained how inconsistent defenses result in prejudice that is so fundamental that it cannot be cured by less drastic measures, such as a limiting instruction. See Zafiro, 506 U.S. at 539 ("When the risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); Nadeem, 2014 WL 3563407, at *3, *6 (denying a motion for severance based on alleged antagonistic defenses, where "there are only four defendants, trial will last at most four weeks, and any prejudice from the introduction of evidence irrelevant to [the moving defendant] can be cured through limiting instructions").

        B.    Yue Fails to Show that a Joint Trial Will Result in "Spillover Prejudice"

Yue also argues, without merit, that a significant risk of "spillover prejudice" requires severance here. To buttress his claim of spillover prejudice, Yue seeks to contrast "hundreds or thousands" of fraudulent claims that Yip submitted to Medicaid for Blue Sky, as alleged in Counts One and Count Four, with the "three checks" that Yue signed, as alleged in Count Four. Mot. at 8-9.

Yue's argument is without merit because the phrase "spillover prejudice" refers to "evidence admissible against only one defendant [that] is prejudicial to all defendants." United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992). "Evidence adduced against one alleged co-conspirator is 'neither spillover nor prejudicial' if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity." United States v. Spicer, No. 10-CR-657 (SJ), 2013 WL 871952, at *3 (E.D.N.Y. Mar. 7, 2013) (citing United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial

13

nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.")). "This is true even when the co-conspirator's acts are of greater severity." Id.

Here, the challenged evidence is neither "spillover" nor "prejudicial" because Yue fails to identify any evidence that would be inadmissible against him at a separate trial. As Yue appears to acknowledge, the false claims submitted on behalf of Blue Sky are probative of the conspiracy to pay kickbacks and defraud the United States with which both defendants are charged in Count Four. See Mot. at 8 (discussing false claims in Overt Acts (d), (e), and (g) of Count Four). Specifically, the false claims submitted for services purportedly provided by Blue Sky are relevant not merely because they were for services that were not rendered as represented, but also because they are claims that were induced by the payment of kickbacks, contrary to the program rules and the Anti-Kickback Statute. And because Yue was a co-owner of Blue Sky and other SADCs, the false claims are relevant to show that the kickbacks he paid and received were in furtherance of claims submitted to a federal health care program. Thus, these false claims are admissible against Yue even at a separate trial. See Spicer, 2013 WL 871952, at *3 (rejecting the defendant's motion for severance based on "spillover prejudice" where evidence pertaining to a robbery and murder committed by co-defendants was admissible against the movant as acts in furtherance of a conspiracy).

Evidence against Yip to establish the health care fraud conspiracy charged in Count One is inextricably intertwined with, and overlaps with the proof of Count Four with which both defendants are charged. This is so because both counts require proof of a nexus to the delivery of items or services that a federal health care program would pay for, i.e., Medicare and Medicaid. Accordingly, even if Yue faced a separate trial, evidence of the claims submitted to Medicare and

14

Medicaid would be admissible against him to prove (i) his role in the conspiracy to defraud the United States and to pay and receive health care kickbacks, and (ii) the SUA for the money laundering counts with which he is charged.[4]

Finally, even if a joint trial involved prejudicial evidence admissible only against Yip, Yue would not suffer any "undue prejudice" from its introduction in a manner that requires severance. There is no reason to believe the jury would be confused and mistakenly believe that Yue is charged with conduct that is not alleged in the Superseding Indictment, much less any reason to believe limiting instructions would be inadequate. See, e.g., O'Connor, 650 F.3d at 860 (affirming the denial of a severance motion in a sex trafficking case where evidence of the non-moving defendant's past pedophilic conduct would have been admissible at a trial of appellant alone and the jury was given appropriate instructions to minimize any possibility of prejudicial spillover).

In short, the charges against Yip and Yue are intertwined and involve substantially the same evidence, which would be admissible against Yue in a separate trial. Therefore, any limited quantum of evidence that is admissible only against Yip is unlikely to be prejudicial to Yue, much less irreparably so. Yue should be tried with his co-conspirator.

---

[4] Yue's reliance on the numerosity of Yip's false claims is without merit because a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." Cardascia, 951 F.2d at 483. See also United United States v. Wang, No. 23 CR. 118-3 (AT), 2024 WL 1251105, at *6 (S.D.N.Y. Mar. 22, 2024) ("[I]t is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role."). In addition, the argument ignores the volume of kickbacks paid. The evidence against Yue at trial will substantially exceed the "three checks" charged as overt acts of Count Four.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the Yue's severance motion should be denied in all respects.

Dated: Brooklyn, New York
       December 1, 2025

                                                        Respectfully submitted,

                                                        LORINDA LARYEA
                                                        Acting Chief, Fraud Section
                                                        Criminal Division
                                                        U.S. Department of Justice

                        By: */s/ Patrick J. Campbell*
                                                       Patrick J. Campbell
                                                        Leonid Sandlar
                                                        Trial Attorneys, Fraud Section
                                                        Criminal Division
                                                        U.S. Department of Justice
                                                        (202) 262-7067

Cc:   Clerk of the Court (NRM)
        Counsel of record (by ECF)